UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JIE QUAN, ) | No. SC 06-7881 |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER DENYING |
| ) | DEFENDANTS' |
| MICHAEL CHERTOFF, Secretary of the ) | MOTION TO DISMISS |
| Department of Homeland Security, ) | |
| EMILIO GONZALES, Director, U.S. ) | |
| Citizenship and Immigration ) | |
| Services, CHRISTINA POULOS, ) | |
| Director, California Service ) | |
| Center, U.S.C.I.S., Robert Mueller,) | |
| Director of Federal Bureau of ) | |
| Investigation, ) | |
| ) | |
| Defendants. ) | |

## I. INTRODUCTION

Before the Court is a Motion to Dismiss pursuant to Federal Rules of Civil Procedure ("FRCP") 12(b)(1) and 12(b)(6) by Defendants Michael Chertoff, et al. ("Defendants"). See Mot. Plaintiff Jie Quan ("Plaintiff") has opposed the Motion. See Opp'n.

For the reasons stated herein, Defendants' Motion to Dismiss is DENIED.

## II. BACKGROUND

The instant action challenges the continued failure of the United States Citizenship and Immigration Services ("CIS") to render a decision on Plaintiff's Application to Adjust to Permanent Resident Status, or I-485, ("Adjustment Application" or "I-485"). See Compl.

Plaintiff is a native and citizen of the Peoples Republic of China. Id. at 1. On January 20, 2005, she filed her I-485. Id. Plaintiff's husband's employer filed an I-140, Immigrant Petition for Alien Worker, on his behalf on the same day. See id. at 2-3. Plaintiff's husband's I-140 was approved on May 13, 2005. Id. at 3. Plaintiff's Adjustment Application has yet to be approved. Id. Plaintiff had her biometric done for a second time on September 28, 2006. Id. Plaintiff has been informed by CIS that adjudication of her I-485 has been delayed by the failure of the United States Federal Bureau of Investigation ("FBI") to complete her name check. Id.

On December 22, 2006, Plaintiff filed the Complaint, which seeks to require Defendants to "expeditiously complete [Plaintiff's] FBI security check for her I-485" and "expeditiously complete [her] I-485," as well as reasonable attorney's fees and any other relief the Court deems proper. Id. at 4. Defendants filed the instant Motion on February 20, 2007. See Mot.

/

2

## III. DISCUSSION

### A. Subject Matter Jurisdiction

Defendants argue that the Complaint should be dismissed pursuant to FRCP 12(b)(1) on the ground that the Court lacks the subject matter jurisdiction to hear Plaintiff's complaints regarding the pace of the adjudication of her Adjustment Application. See Mot. This argument fails.

#### 1. Legal Standard

As a preliminary matter, Defendants' 12(b)(1) Motion is a facial challenge to the Court's subject matter jurisdiction.

> In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction.

Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). The gravamen of the Motion is that the Court cannot hear Plaintiff's challenge to the pace of the process, because the law vests unlimited discretion regarding that pace in the CIS. The Motion does not dispute any facts in the Complaint which Defendants admit would otherwise provide a basis for the Court's jurisdiction. See Mot.

Thus, the Court is obligated to accept all well-pleaded factual allegations in the Complaint as true and construe them in a light most favorable to the Plaintiff. See Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003). The Court,

3

therefore, disregards the extrinsic evidence offered by Defendants. Compare Safe Air for Everyone, 373 F.3d at 1039 ("In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment."). Nonetheless, Plaintiff, as the party seeking to invoke the Court's jurisdiction, "has the burden of proving the actual existence of subject matter jurisdiction," and the Complaint will be dismissed if she fails to carry it. Thompson v. McCombe, 99 F.3d 352, 353 (9th Cir. 1996).

    2.   Analysis

Plaintiff offers three potential bases for the Court's jurisdiction to hear her claim against Defendants: federal question under 26 U.S.C. § 1361; the Mandamus Act, 28 U.S.C. § 1361; and the Administrative Procedures Act 5 U.S.C. §§ 701 et seq. See Compl. at 2. The Court hereby finds that it has subject matter jurisdiction under the Mandamus Act and APA to hear Plaintiff's mandamus complaint regarding the pace of her I-485 adjudication.

The Mandamus Act states: "The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. This relief is "available to compel a federal official to

perform a duty if: (1) the individual's claim is clear and certain; (2) the official's duty is nondiscretionary, ministerial, and so plainly prescribed as to be free from doubt, and (3) no other adequate remedy is available." Patel v. Reno, 134 F.3d 929, 931 (9th Cir. 1998).

Defendants implicitly concede, and the Court accepts, construing the facts of the Complaint in the Plaintiff's favor, that Plaintiff has no other adequate remedy available. See Mot. Defendants argue, however: "[t]he decision whether to grant or deny plaintiff's adjustment of status is plainly committed to the discretion of the Attorney General by statute," id. at 5; and "[t]his discretion necessarily includes not only discretion over whether to grant an adjustment, but also over how and when to do so," id. at 6. On this basis, Defendants conclude that Plaintiff has no clear and certain claim to "immediate adjudication . . . and the defendants' actions are discretionary rather than ministerial." Id. at 5.

This argument fails. First, Plaintiff has not made a claim for immediate adjudication, but rather "expeditious[]" adjudication. See Compl. at 4. Second, and more significantly, Plaintiff has the clear and certain right--to which Defendants have a corresponding non-discretionary duty--to have her I-485 adjudicated in a reasonable time.

It appears that all of the courts in this district which have

5

been presented with this question, and the majority of other courts presented with it, have found that the CIS, or its predecessor agency, has a nondiscretionary duty to adjudicate immigration applications within a reasonable time. See, e.g., Rzaq v. Poulos, No. 06-2461, 2007 WL 61884, *3 (N.D. Cal. Jan. 8, 2007); Singh v. Still, 470 F. Supp. 2d 1064, 1067 (N.D. Cal. 2006); Aboushaban v. Mueller, No. 06-1280, 2006 WL 3041086, *1 (N.D. Cal. Oct. 24, 2006); Iddir v. I.N.S., 301 F.3d 492, 500 (7th Cir. 2002); Razik v. Perryman, No. 02-5189, 2003 WL 21878726, *2 (N.D. Ill. Aug. 07, 2003); Fu v. Reno, No. 99-0981, 2000 WL 1644490, *5 (N.D. Tex. Nov. 01, 2000); Yu v. Brown, 36 F. Supp. 2d 922, 932 (D.N.M. 1999); Agbemaple v. I.N.S., No. 97-8547, 1998 WL 292441, *2 (N.D. Ill. May 18, 1998).

These courts have reached this result according to the following basic line of analysis: 1) they conclude that while the relevant statutes and regulations give the agency the discretion to choose how to decide an application, they impose on it a nondiscretionary duty to make such a decision; and 2) find that such a decision must be made in a reasonable time, either without reasoning or on the basis of APA Section 555(b). See, e.g., Singh, 470 F. Supp. 2d at 1067; Aboushaban, 2006 WL 3041086, at *1-2.

Defendants make much of the following language in Section 245 of the Immigration and Naturalization Act ("INA"), which they

6

claim gives the CIS unlimited discretion over the adjustment process:

> The status of an alien who was inspected and admitted or paroled into the United States . . . may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence.

8 U.S.C. § 1255(a); see Mot. at 3; compare Agbemaple 1998 WL 292441, at *2 (finding that this language created a non-discretionary duty to adjudicate).

However, 8 C.F.R. § 245.2, which governs the application process for Section 245 adjustments such as Plaintiff's, under the heading "Decision," states:

> The applicant shall be notified of the decision, and if the application is denied, of the reasons for denial. . . . If the application is approved, the director shall record the alien's admission for lawful permanent residence as of the date one year before the date of the approval of the application.

8 C.F.R. § 245.2(5) (emphasis added).

In line with analogous decisions by other courts, the Singh court found that this language evidenced a mandatory duty on the part of the predecessor agency of the CIS to adjudicate I-485 applications. 470 F. Supp. 2d at 1067 (also finding that identical language in 8 C.F.R. § 209.2(f), which applied to another application of a different kind at issue in the case, supported an analogous conclusion); see also Aboushaban, 2006 WL 3041086, at *2 (finding that identical language contained in 8 C.F.R. § 209.2(f) "creat[ed] a non-discretionary duty to adjudicate plaintiff's

7

application"); Patel, 134 F.3d at 932 (finding that analogous language in 22 C.F.R. § 42.81 supported its conclusion that a consular office had a nondiscretionary duty to approve or deny a visa application). In emphasizing the distinction between the discretion granted to the agency by INA Section 245 and the nondiscretionary duty imposed on it by applicable regulations, the Singh court stated: "[T]here is a difference between the INS's discretion over how to resolve an application and the INS's discretion whether it resolves an application." 470 F. Supp. 2d at 1067 (citing Yu, 36 F. Supp. 2d at 931) (emphasis in original); see generally Patel, 134 F.3d at 931-32 ("[W]hen the suit challenges the authority of the counsel to take or fail to take an action as opposed to a decision taken within the consul's discretion, jurisdiction exists.")

Defendants also make much of the fact that 8 U.S.C. § 1255 "does not set forth any time frame in which a determination must be made on an application." Mot. at 3. This fact, however, is unavailing.

Section 555(b) of the APA states: "With due regard for the convenience and necessity of the parties or their representatives, and within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b). "This prescription applies when Congress imposes a duty but does not articulate a specific time frame within which that duty must be

8

honored." Rzaq, 2007 WL 61884, at *4; see also 5 U.S.C § 706 (obliging reviewing courts to "compel agency action unlawfully withheld or unreasonably delayed.").

The Court FINDS that the CIS has a duty to adjudicate Plaintiff's Adjustment Application within a reasonable time, and thus the Court has jurisdiction to hear a mandamus complaint by Plaintiff regarding the pace of that adjudication.

**B.    Failure to State a Claim Upon Which Relief Can be Granted**

1.    Legal Standard

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint.  Dismissal pursuant to Rule 12(b)(6) is appropriate only where it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Levine v. Diamanthuset, Inc., 950 F.2d 1478, 1482 (9th Cir. 1991), quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  In reviewing the motion, a court must assume all factual allegations made by the nonmoving party to be true and construe them in the light most favorable to the nonmoving party.  North Star Intern. v. Arizona Corp. Comm'n, 720 F.2d 578, 590 (9th Cir. 1993).

2.    Merits

As just discussed, Defendants have a non-discretionary duty to adjudicate Plaintiff's Adjustment Application within a reasonable time.  See supra.

9

The Court's determination whether Defendants have violated this duty is guided by what are known as the "TRAC factors":

> (1) the time agencies take to make decisions must be governed by a "rule of reason"[;] (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason [;] (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake [;] (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority[;] (5) the court should also take into account the nature and extent of the interests prejudiced by the delay[;] and (6) the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed."

Independence Min. Co., Inc. v. Babbitt, 105 F.3d 502, 507 n. 7 (9th Cir. 1997) (quoting Telecommunications Research & Action v. F.C.C., 750 F.2d 70, 79-80 (D.C. Cir. 1984)) (modifications in original); See Rzaq, 2007 WL 61884, at *6; Singh, 470 F. Supp. 2d at 1069 (quoting an analogous standard articulated in Yu, 36 F. Supp. 2d at 934). It is also relevant to "look to the source of the delay--e.g., the complexity of the investigation as well as the extent to which the defendant participated in delaying the proceeding." Singh, 470 F. Supp. 2d at 1068 (quoting Saleh, 367 F. Supp. 2d at 512) (internal modifications omitted).

It appears possible that Plaintiff could prove a set of facts that would lead this Court to conclude that the delay in

/

/

adjudication of her Adjustment Application was unreasonable.

**IV.   CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss is DENIED.  The Court further SETS this action for summary adjudication on August 17, 2007.  The parties are ORDERED to submit appropriate briefing in accordance with the rules.

IT IS SO ORDERED.

Dated: June 6, 2007.



UNITED STATES DISTRICT JUDGE

11